**Eric WEIR, Petitioner-Appellant,**

**v.**

**George WILSON, Dept. of Corrections; Steven L. Beshear, Attorney General, Respondents-Appellees.**

**No. 83–5592.**

United States Court of Appeals, Sixth Circuit.

Argued June 12, 1984.

Decided Sept. 26, 1984.

Donna Boyce Proctor (argued), Asst. Public Advocate, Frankfort, Ky., for petitioner-appellant.

Steven L. Beshear, Atty. Gen. of Ky., James L. Dickinson, David A. Smith (argued), Asst. Attys. Gen., Frankfort, Ky., for respondents-appellees.

Before ENGEL and KEITH, Circuit Judges; WEICK, Senior Circuit Judge.

PER CURIAM.

Eric Weir appeals from an order of the United States District Court for the Western District of Kentucky denying his petition for a writ of habeas corpus.[1] Following a jury trial in Kentucky circuit court, Weir was convicted of first degree manslaughter and sentenced to twenty years imprisonment. When Weir took the stand at trial, the prosecutor impeached Weir by referring to his silence during the brief period between his arrest, and the giving of *Miranda* warnings. Weir contends that *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), forbids the government from using his post-arrest silence to impeach him, since Weir received full *Miranda* warnings within five or ten minutes of his first contact with the officers.

The Supreme Court of Kentucky affirmed Weir's conviction, leading Weir to file a petition for habeas corpus relief with the district court. The district court held that only if the police had arrested Weir and given him his *Miranda* warnings simultaneously could Weir have avoided impeachment on the stand for his post-arrest silence. Since there was at least a two or three minute delay between Weir's arrest and the giving of the warnings, the post-arrest silence, was in the district court's view, properly used for impeachment purposes.

The district court's denial of Weir's habeas petition was preceded by an evidentiary hearing conducted by a magistrate, who entered a report recommending that the petition be denied. The report incorporated by reference the facts set forth by the Supreme Court in *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), and by this court in *Weir v. Fletcher,* 658 F.2d 1126 (6th Cir.1981). In addition, the magistrate made the following findings of fact, which were based on evidence presented at the hearing:

1. On or about September 25, 1977, the petitioner was at his mobile home with his wife and Don and Regina Sullenger. (Transcript of Evidence, hereinafter referred to as TE, p. 4).

2. State troopers James Stevens, Billy Davidson, and Livingston County Deputy Sheriff Nathan Cooper went to the mobile home in the afternoon of the above date. With Trooper Davidson covering the back door of the trailer, Trooper Stevens and Deputy Cooper approached from the front door. Upon entering the open front door, Deputy Cooper told the petitioner that there was a warrant for him in McCracken County on a charge of murder. The petitioner sat down on the sofa and put on his socks and boots. Nothing was said by the arresting officers and Mr. Weir while the three were in the trailer. Deputy Cooper stated that the petitioner, "never said anything at all." (TE pp. 15, 31, 32, 35).

---

**1.** This is Weir's second petition for a writ of habeas corpus. Weir's first petition was initially granted by the district court on the ground that the prosecutor's impeachment use of Weir's post-arrest silence violated Weir's Fifth and Fourteenth Amendment rights. This court affirmed the decision of the district court. *Weir v. Fletcher,* 658 F.2d 1126 (6th Cir.1981). However, the United States Supreme Court reversed

the Sixth Circuit's decision because the record did not indicate that Weir received *Miranda* warnings on arrest and hence his silence was not protected because it was not attributable to the *Miranda* warnings. *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982). The Sixth Circuit remanded the case to the district court and ordered that Weir's petition be dismissed without prejudice.

3. Approximately two to three minutes passed from the time the officers advised the petitioner of the warrant and the time they left the trailer. (TE p. 27).

4. The petitioner explained his silence in the trailer after being advised of the warrant with three statements; to-wit:

A. "Because I always heard to keep your mouth shut until you talked to an attorney or not to say anything." (TE p. 12).

B. "No, talking to them didn't really enter my mind." (TE p. 40).

C. "Well, I just didn't have anything to say to them that would benefit me. I couldn't see any point in talking to them. I didn't want to talk to them. I wanted to see an attorney." (TE p. 40).

5. Upon leaving his trailer, the officers took the petitioner to the cruiser where he was advised of his *Miranda* rights for the first time. (TE pp. 24–26).

6. Approximately 5 to 10 minutes elapsed from the time the deputy and trooper took the petitioner in custody and when he was finally advised of his *Miranda* rights. (TE p. 30).

7. In response to a question posed by the Court at the evidentiary hearing, the petitioner explained his reaction upon being advised that he was being arrested for murder. He stated at page 39 of the Transcript of Evidence:

"Well, I didn't ... I don't think I really reacted. I just had to go, I guess, you know, with them. So I just ... that is about the way I think I felt about it. Wasn't anything to do about it, but go."

*Weir v. Wilson*, No. C 82–0110 P(J), Report of Magistrate King at 2–3 (W.D.Ky. April 14, 1983).

In light of the Supreme Court's decision in *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), the magistrate recommended, and the district judge ordered, that Weir's habeas writ be denied. Nonetheless, both the magistrate and the district judge expressed considerable dis-

pleasure with this outcome. The magistrate noted:

Although the magistrate feels that an accused's right to remain silent attaches at the moment of arrest whether or not the arresting authority choses to give the *Miranda* warnings immediately after arrest, or as in the case at bar, at some time thereafter, and seeing the abuses by law enforcement officers that the above holding threatens; the magistrate must surrender his opinion of what justice requires to that of the United States Supreme Court in *Weir v. Fletcher* [sic *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982)] ...

Report of Magistrate King at 8. District Judge Edward H. Johnstone observed in a similar vein:

To hold that post-arrest silence of two to ten minutes can be used to impeach a defendant is to ignore the physical limitations inherent in an arrest situation. Such a rule also threatens to emasculate the protection afforded by the Supreme Court's rule in *Doyle* [sic *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)] by permitting an arresting officer to manipulate the parameters of a defendant's constitutionally protected silence.

While this court would define the word "immediately," as used by the Supreme Court in *Fletcher v. Weir*, in terms of what is reasonable under the circumstances of an arrest, the *literal* meaning of that word requires that, in this case, the *Miranda* warning would have to be given simultaneously at the time of the arrest in order for Weir to have avoided impeachment on the stand for his post-arrest silence. Under this definition, the court is compelled to accept the mandate of the Supreme Court and conclude that absent Weir's receipt of a *Miranda* warning during the period in which he remained silent immediately after his arrest, the prosecutor's cross-examination of Weir, as to his post-arrest silence, did not violate his constitutional due process rights.

*Weir v. Wilson,* No. C 82–0110 P(J), slip op. at 6 (W.D.Ky. June 16, 1983).

Thus it is apparent that reasonable minds differ as to the relative values of an expansive reading of *Miranda,* on the one hand, and on the other, of permitting the broadest possible cross-examination of a defendant who submits himself as a witness in his own trial. However, it is enough for our purposes here to observe that the prosecutor's cross-examination was not shown to have extended to any silence which occurred after the *Miranda* warnings were administered. We believe that in the present posture of the law, it is necessary that the defense make such a showing before *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), comes into play.

We also note that the most damaging questions asked during the cross-examination of Weir, which is quoted at length in our opinion in *Weir v. Fletcher,* 658 F.2d 1126, 1127–28 (6th Cir.1981), did not pertain to Weir's post-arrest silence. Most of the cross-examination, and indeed the most harmful questions, went to Weir's fleeing the scene of the crime and to his claim that he had lost the knife after the stabbing. *Id.* This evidence was admissible in any event against Weir, and was far more inculpatory than the inferences which might be drawn from Weir's silence at the time of his arrest.

The magistrate and the district judge express concern that, owing to the presently diminished scope of *Doyle,* the police will be deterred from the timely administration of *Miranda* warnings.[2] Presumably the police might delay giving the *Miranda* warnings because, assuming the accused decides to take the stand, thereby waiving his Fifth Amendment right not to testify, he can then be questioned as to his silence, whereas he could not be so interrogated where the *Miranda* warnings immediately administered. It is to be remembered, however, that no prejudice can arise at all unless the accused elects to testify in his own behalf at the trial. *Doyle,* as modified by more recent decisions, stands for the proposition that a defendant who elects to take the stand places himself in the traditional posture of any witness in a trial, fully subject to the normal rules of cross-examination. *Fletcher v. Weir,* 455 U.S. 603, 605–07, 102 S.Ct. 1309, 1311–12, 71 L.Ed.2d 490 (1982); *Jenkins v. Anderson,* 447 U.S. 231, 239, 100 S.Ct. 2124, 2129, 65 L.Ed.2d 86 (1980); *see also Anderson v. Charles,* 447 U.S. 404, 408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980) (*"Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances.") Thus it is permissible to inquire concerning a defendant's silence where that silence is inconsistent with the defendant's subsequent conduct and testimony; however, this assumes that there have been no affirmative assurances of the sort embodied in the *Miranda* warnings. *Fletcher v. Weir,* 455 U.S. 603, 606–07, 102 S.Ct. 1309, 1311–12, 71 L.Ed.2d 490 (1980). Where a defendant elects to testify, there is nothing particularly sacred about his earlier silence unless its use for impeachment purposes violates any assurance, induced by the administration of *Miranda* warnings, that such silence will not be used against him. Absent such circumstances where governmental action induces silence, the Supreme Court has simply held that there is no good basis for establishing one rule for defendants on trial and another rule for all other witnesses.

The inferences which can be drawn from a defendant's silence remain equivocal, but they are not for that reason improper matters for a jury's consideration. The jury is,

---

**2.** Notwithstanding these concerns expressed by the magistrate and district judge, it should be noted that in this case there was no manipulation of the parameters of Weir's constitutionally protected silence. Further, most state courts have the same power to prohibit such inquiry as is vested in federal courts by Rule 403 of the Federal Rules of Evidence, which states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Particular circumstances may require, as a matter of fundamental fairness and hence of due process, that evidence of a defendant's post-arrest silence be excluded. *See United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973).

after all, involved in a search for truth, and we presume that it has as much right to draw inferences from the defendant's silence before he received the *Miranda* warnings, as it has to draw inferences from the previous silence of any other witness. The prosecution can claim the silence to be inconsistent with the defendant's later protestation of innocence or his later assertion of a fact that has only recently come to light. On the other hand, the silence may also raise an inference consistent with innocence: that the defendant refrained from speaking out of fright, or out of some general awareness that it is best to remain silent until legal or other assistance is obtained. Both inferences may, in a given case, have considerable appeal to the good sense of the jury. There is no reason to conclude that the jury lacks the wisdom to weigh the relative merits of each inference in assessing the defendant's credibility as a witness.

For the foregoing reasons, we conclude that the resolution of this case by the district court conforms to the requirements of *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), as clarified by *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982).

AFFIRMED.