952 F.2d 403
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles C. MILBURN, Petitioner-Appellee,
v.
COMMONWEALTH OF KENTUCKY, Respondent-Appellant.
 No. 91-5211.
 United States Court of Appeals, Sixth Circuit.
 Jan. 17, 1992.
 
 Before BOGGS, Circuit Judge, LIVELY, Senior Circuit Judge, and CLELAND, District Judge.*
 PER CURIAM.
 
 
 1
 The Commonwealth of Kentucky here appeals an order of the district court which grants plaintiff a conditional writ of habeas corpus. The district court found that the plaintiff's due process rights were violated at his criminal trial in Kentucky because a witness's testimony included the statement that plaintiff "had in fact invoked his Fifth Amendment rights" and because the prosecutor later, in closing argument, attacked the self defense theory proposed at trial by asking "... if that's what happened, then why didn't he tell the police that?" J.A. at 34, 127.
 
 
 2
 The judge focused upon these two circumstances and found that, although the witness's statement may not have been in direct contravention of standards which safeguard a criminal defendant's post-Miranda[1] silence, it "offered the principles" of such standards; when examined in conjunction with the prosecutor's closing argument, the constitutional error was, the court held, "blatantly apparent." After reviewing the same testimony and argument in the perspective of the trial environment, we find that we cannot agree with the district judge's interpretation, and reverse the grant of writ.
 
 I. BACKGROUND FACTS
 
 3
 During the night of September 19, 1987, Mr. Milburn had been drinking heavily. He left Al-Dee Liquor Store after being involved in a fight, entered his truck and then, he later claimed, fell asleep. A shooting incident erupted some time later, with Mr. Milburn emerging from his truck firing a handgun. One of three victims was killed, being shot in the head at close range. Another was shot in the shoulder and a bystander was shot in the arm. Three additional slugs from the plaintiff's weapon had lodged in a Coke machine.
 
 
 4
 Mr. Milburn then got back into his truck and sped away, losing control in a one-vehicle accident a few miles away. At the accident scene, when asked by the investigating officer what had happened, he said had been attacked and chased. While en route to the hospital Officer Hunt read him his Miranda rights, but the plaintiff made no statement. At the hospital Officer McDermott attempted to question him with no success. Later, Officer Hunt informed Mr. Milburn a second time of his Miranda rights. The plaintiff in response explained that he had been involved in a fight at 7th and Kentucky and that he was running from a group of blacks (and expressed this though in terms notably less civil than those used here). McDermott at that point obtained a more lengthy statement from Mr. Milburn in which he claimed he was simply sitting in his truck when he himself was attacked. Importantly, the plaintiff there claimed that he shot no one and denied owning a gun.
 
 
 5
 The next day, McDermott sent Officer Rutledge with a tape recorder "to take Milburn's statement", but Mr. Milburn by that time had contacted an attorney and declined any further statement. Rutledge informed McDermott that he wasn't able to get a statement because the plaintiff had exercised his Fifth Amendment rights. J.A. at 127.
 
 
 6
 At trial, in re-direct examination of Officer McDermott by defense counsel, the final exchange was this:
 
 
 7
 Q. With reference to that--did the following day--did you direct Detective Rutledge to go to Humana Hospital to take a statement from Mr. Milburn?
 
 
 8
 A. Yes, sir I did. I asked Detective Rutledge if he would go and see if he could get some more information regarding Mr. Milburn's knowledge of this incident. Detective Rutledge came back and indicated to me that he was unable to get any further statements from Mr. Milburn, that he had in fact invoked his Fifth Amendment rights.
 
 
 9
 J.A. at 127.
 
 
 10
 The attorney then moved for a mistrial which was denied by the trial judge, finding that the answer was either sought by the defense or, at the least, reasonably foreseeable. As that judge put it, "we all sat here and saw it coming. ... we all knew what was going to happen and I think at any time if you had not wanted that to come in, you could have stopped it." J.A. at 129.
 
 
 11
 Mr. Milburn then asserted self-defense and extreme emotional disturbance. He claimed that he had passed out in his truck and that on two or three occasions several people approached his truck. He said that later, after he had pushed them away, someone reached into his jeans pockets, and that someone was "right on top of" him. Mr. Milburn said that, at that point, he came out of the truck and began firing his gun at the ground in order to scare them away.
 
 
 12
 The assistant prosecutor in her closing argument attacked the plaintiff's credibility and the version of events he presented at trial, saying, among many other things,
 
 
 13
 So that is totally unbelievable to think that he remembers firing the shot but he couldn't remember anything at all about what that person looked like. And the only thing about that, if that is what happened then why didn't he tell the police that? Why didn't he tell the police that? He didn't tell a single person that somebody was coming in the window and grabbing at his pocket and grabbing at his neck.
 
 
 14
 * * *
 
 
 15
 * * *
 
 
 16
 Then what did he do? He lied to the police about what happened.
 
 
 17
 J.A. at 148-149.
 
 
 18
 Defense counsel objected to the prosecutor's argument moments later, but his only stated concern was that she was arguing facts concerning the firearm not established in the record. The objection was overruled, and the argument continued.
 
 
 19
 The jury was unpersuaded by the plaintiff's defense and found him guilty of "Wanton Murder" and First Degree Assault. He appealed without success to the Kentucky Supreme Court, but his petition for writ of habeas corpus was granted conditionally by the federal district court.
 
 II. DISCUSSION
 A. FINDINGS OF THE DISTRICT JUDGE
 
 20
 Judge Johnstone found that Milburn's due process right to a fair trial was violated based on the statement in re-direct examination made by Officer McDermott, and that even though this testimony which included the phrase "his Fifth Amendment rights" did not fall strictly within the parameters of the prohibited use of post-arrest silence, the comment nonetheless "offended the principles enunciated by the Doyle court." J.A. at 127. The transgressing testimony was aggravated, the judge found, by the statement of the assistant prosecutor in her closing argument. The district judge found that the prosecutor's statement, based only upon the "abbreviated transcript" made available to the court, appeared violative of the Doyle standards, and that the constitutional infirmity was "blatantly apparent."
 
 B. THE DOYLE BASIS FOR FINDINGS
 
 21
 Doyle v. Ohio, 426 U.S. 610 (1976), involved a drug purchase by an informant under surveillance. At trial, the defendants claimed that they were actually the ones making the purchase, that the police informant was the seller, and that they decided at the last moment not to go through with the buy. The prosecution had no rebuttal evidence and resorted to emphasizing that the defendants' interesting trial defense was not mentioned when they were arrested.
 
 
 22
 The Supreme Court held, however, that use of a defendant's post-arrest, post-Miranda, silence to impeach a trial explanation of incriminating evidence was fundamentally unfair and therefore a deprivation of due process. The Court would not abide such a unilateral retraction of Miranda's implicit assurance to a suspect that mere silence would not be used against him in court.
 
 C. COMMENTS OF THE OFFICER
 
 23
 Here it was defense counsel that elicited the questioned testimony by pointing the witness toward the hospital conversation between Milburn and Rutledge. This Circuit has held that where it was a defendant's own counsel--not, as in Doyle, the prosecutor--who elicits testimony concerning post-arrest, post-Miranda silence, Doyle principles do not apply[2]. Since the Doyle principles do not properly apply to this case, the district court's conclusion that they were violated is without basis.
 
 
 24
 Additionally, we think that deference must be afforded the trial judge's observation of the tone and effect of the statement at trial. The statement was offered in the wake of questioning about whether McDermott had informed Milburn of his Miranda rights at the hospital the night of the incident, with the final (and troublesome) question by defense counsel dealing with whether McDermott had sent an officer to question Milburn the next day.
 
 
 25
 The trial judge, in overruling counsel's motion for mistrial, noted that, although he probably was not entirely responsive, McDermott nonetheless slowly and thoughtfully responded to defense counsel's question, taking at least 15 seconds to do so. J.A. at 129. When the judge said that "we all sat here and saw it coming" and "if that wasn't the information you wanted to come out, you could have stopped the witness" he clearly considered the response as though it were a deliberate solicitation of that information. We cannot disagree. Indeed, we see little other than this predicament that could have logically resulted from the defense attorney's question, which placed the witness on an incline sloping toward commentary on Milburn's silence. It must have been obvious immediately to the defense counsel that this witness was not stopping after he correctly began his answer with "yes" to the heart of this yes-or-no question. If the attorney raises no hand to stop the witness's continuing answer, it should seem reasonable from the average witness's point of view to forge ahead with the expanded explanation the attorney seems, by his silence, to be interested in hearing. The answer recorded in this instance appears easily long enough to require a normal person to take at least one breath somewhere within it, and there is no indication that defense counsel was doing anything other than paying attention to the witness as he answered. All of this simply amplifies the observation of trial judge that he and everyone else "saw it coming", and that the attorney essentially got what he was asking for. Beyond this, Mr. Milburn's argument that the witness gave the answer in direct violation of warnings to the prosecutor not to solicit comments on post-arrest silence is lukewarm and unpersuasive. The context of the trial judge's warnings to the prosecutor dealt with Milburn's post-arrest silence only at the hospital immediately following his arrival there; such was the topic of the suppression hearing. No one on this record discussed or expected defense questioning as to post-arrest silence the next day involving an officer different from the one involved in the suppression hearing.
 
 D. THE ARGUMENT OF THE PROSECUTOR
 
 26
 Mr. Milburn asserts that it "is clear that the prosecutor manifestly intended, and that the natural and necessary conclusion of the jury would be, that she was referring to Milburn's refusal to make a statement on Sunday evening." The district court so held, determining that the prosecutor's statement in closing argument improperly commented on Milburn's failure to mention self-defense as a justification for the shooting and was, therefore, a Doyle error which went to the heart of Milburn's defense.
 
 
 27
 There were only three encounters about which the prosecutor could have been speaking: first at the scene of the accident, next at the hospital that night, and finally at the hospital the following day. It is the third hypothesis that was urged by Milburn and accepted by the district judge.
 
 
 28
 But, beginning on page 147 of the Joint Appendix and continuing through page 149, there are no less than a dozen references to the credibility of the defendant, including his motivation to lie and his several inconsistent statements. It is abundantly clear to this court that the prosecutor's statements attacking Milburn's failure to provide an on-the-scene story that he would later proffer at trial must be viewed within this setting. Whether she refers to statements made before arrest or after being "Mirandized" is inconsequential. In either event, within the context of her argument, the prosecutor was referring to the defendant's statements, not to his silence, and it matters not a bit which of the statements it was.[3]
 
 
 29
 In our opinion, and based upon what may be a more complete transcript of the trial than was available to the district judge, the correct interpretation of the prosecutor's comments reveals that she referred to a time when the plaintiff did not decline but rather accepted the opportunity to speak to officers. It is true enough that her argument "strikes at the heart" of the defense, but hard blows by litigators, even to the heart of the opponent's case, are not perforce unfair ones.
 
 
 30
 These comments do not make improper use of silence since "a defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent." Anderson v. Charles, 447 U.S. 404, 408 (1980). The prosecutor's remarks in argument, because they focused upon inconsistent and incriminating statements, presented no enhancement of Officer McDermott's testimony and no error can be found within them. Accordingly, the district court's judgment on this issue as well lacks a foundation.
 
 III. CONCLUSION
 
 31
 The judgment of the District Court granting the conditional Writ of Habeas Corpus is REVERSED.
 
 
 
 *
 Honorable Robert H. Cleland, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Miranda v. Arizona, 384 U.S. 436 (1966)
 
 
 [2]
 United States v. Whitley, 734 F.2d 1129, 1136-7 (6th Cir.1984)
 
 
 [3]
 The plaintiff additionally notes, and correctly so, that the pre-arrest statement cannot be the subject of a Doyle violation. Weir v. Wilson, 744 F.2d 532 (6th Cir.1984)