Filed 3/13/14  P. v. Scottzsha CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>SALAAM SCOTTZSHA,<br><br>        Defendant and Appellant. | A137284<br><br>(Contra Costa County<br>Super. Ct. No. 51204478) |

Appellant Salaam Scottzsha received a sentence of 44 years to life in state prison after a jury found him guilty of attempted murder and second degree robbery and other sentencing enhancement allegations were found true.  Scottzsha contends that the prosecutor committed prejudicial misconduct by commenting in final argument on Scottzsha's postarrest, pre-*Miranda*[1] silence; that the court committed sentencing error in imposing a concurrent term for his robbery conviction rather than staying sentence on that offense; and that the court imposed an unauthorized restitution fine.  We will order a reduction in the restitution fine but otherwise affirm.

## I.    BACKGROUND

On December 12, 2011, Deven Jackson was shot three times during an abortive sale of marijuana.  He identified Scottzsha as the prospective buyer, who shot him and absconded with the marijuana.  Jackson survived but was severely injured.  He was flown to the hospital by helicopter for surgery and was initially hospitalized for about 30 days,

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436.

returning to the hospital for another two weeks after his wounds became infected. At trial, Jackson still had scars from the gunshot wounds and the surgeries performed to treat them. Since sufficiency of the evidence to support Scottzsha's conviction is not in issue, we need only briefly summarize the details of the shooting.

On the day of the shooting, Scottzsha called an acquaintance, Tharon Roberts, and told Roberts that he wanted to purchase a large quantity of marijuana. Roberts called Jackson, a close friend, to arrange a transaction for three pounds of marijuana at a price of $2,000 per pound. Jackson and Roberts arrived in Jackson's car at the In-N-Out Burger parking lot in Pinole, along with Jackson's girlfriend and two other men. Scottzsha arrived in a Nissan Altima, accompanied by another man. Scottzsha and Jackson got into the backseat of Jackson's car to discuss the terms of the marijuana sale. Jackson testified that Scottzsha said that he was going to get money for the purchase from his car, but returned with a semiautomatic handgun, pointing it directly at Jackson and saying " 'My thang ain't on safety, what you going to do?' " Jackson attempted to push the barrel of the gun away, but was shot by Scottzsha first in the abdomen and then in the left ribcage. Jackson was shot a third time in the back. Scottzsha fled with the marijuana.

Police recovered three nine-millimeter shell casings from the scene, and found a trail of marijuana debris leading from Jackson's parked car to the area where Scottzsha's car had been parked.

*Scottzsha's Arrest*

Pinole Police Department Detectives Wallace and Combong located and interviewed Roberts on the day following the shooting. Roberts told the detectives that he knew Scottzsha as "Boobie," that he had a distinctive tattoo of a rosary around his neck with a biblical verse reference, and that he lived in the Sobrante Park neighborhood in East Oakland.

On December 14, 2011, Scottzsha was detained by Oakland police, driving the Nissan Altima he had used the night of the shooting. Pinole detectives were notified and came to the scene, where they contacted Scottzsha in custody. Combong testified that

2

Scottzsha "looked calm" when he first observed him, but once he identified himself as a Pinole police officer, Scottzsha "became more profane, started swearing. [I] can't remember the specifics, but I just remember him yelling profanity." Scottzsha "backed away, slumped against the vehicle, appeared nervous, could not maintain eye contact, and had difficulty swallowing . . . ." When Combong and other Pinole officers arrested Scottzsha, telling him that the charges stemmed from a shooting at the In-N-Out Burger in Pinole, Scottzsha told the officers that he "never heard of Pinole and didn't know where Pinole was." Marijuana debris was found on the front seat of Scottzsha's car.

*Scottzsha's Trial Testimony*

Scottzsha admitted that he had arranged, through Roberts, to purchase three pounds of marijuana from Jackson for $6,000. Jackson arrived at the In-N-Out Burger parking lot with three separately wrapped one-pound packages of marijuana in a black trash bag. Scottzsha told Jackson that he only had $5,400 and asked to "slide" until the next day to pay the remaining $600. When Jackson refused, Scottzsha said that he could give him a gun worth $600. Jackson asked to see the gun, and Scottzsha got it from his car. Scottzsha said that Jackson grabbed the gun, which had been converted to full automatic, and that it discharged during a struggle over the weapon. Scottzsha ran to his car and drove away. He denied taking the marijuana. Scottzsha claimed that he did not intend to shoot Jackson, saying "I don't know if he triggered it or I triggered it. I know I was wrestling with him for a gun and I heard it go off."

*Prosecution's Closing Argument*

After closing argument by defense counsel, the prosecutor in rebuttal told the jury: "Defense argues that Mr. Scottzsha never had the opportunity to explain what happened and that, of course, he had to wait until after everybody else had testified. And you know, based on the evidence, that's absolutely false. That in direct proximity to all other witnesses being interviewed, in which all those witnesses say that there was a black male, dreadlocks, A's hat, some of them know about a tattoo, shot . . . Jackson, stole [a] black bag containing marijuana. We know that those are the statements that are given to law enforcement by the witnesses on scene. [¶] And in direct proximity to that, without sitting

3

in a room to hear what those people are saying, the defendant, Mr. Scottzsha, has an opportunity to tell the police when they say, 'We're arresting you for a robbery and an attempted murder at the Pinole In-N-Out,' and his response is, 'I don't know anything about Pinole,' words to [that] effect. And so it's disingenuous for defense counsel to stand up here and say, 'Well, this is the first time that he got to say anything, and of course, it's going to look like he's lined everything up because he's never had a chance to say what he did.' " Defense counsel made no objection.

*Verdict and Sentence*

The jury returned verdicts finding Scottzsha guilty of attempted murder and second degree robbery. (Pen. Code, §§ 664, 187, subd. (a), 211, 212.5, subd. (c).)[2] The jury also found that Scottzsha personally and intentionally used a firearm causing great bodily injury, and that he personally inflicted great bodily injury. (§§ 12022.53, subds. (b)–(d), 12022.7, subd. (a).) After a court trial on prior conviction enhancements, the trial court found that Scottzsha had suffered a serious felony prior conviction (§§ 667, subd. (a)(1), 1170.12), and that he had served a sentence enhancing prior prison term (§ 667.5, subd. (b)).

The court sentenced Scottzsha to a term of 44 years to life in state prison including: 14 years for attempted murder (the middle term of seven years doubled pursuant to § 667, subd. (e)(1)); a consecutive indeterminate term of 25 years to life for personally and intentionally discharging a firearm causing great bodily injury; and a consecutive term of five years for the serious felony prior conviction enhancement. The midterm sentence of three years for the robbery was ordered to run concurrently. Other enhancements were stayed, and the section 667.5, subdivison (b) prior prison term enhancement was stricken. Scottzsha was ordered to pay a $10,560 restitution fine (§ 1202.4, subd. (b)), and he received 379 days presentence custody credits (330 actual days, plus 49 days conduct credits).

---

[2] All further statutory references are to the Penal Code unless otherwise indicated.

4

## II.    DISCUSSION

A.    *Prosecutorial Misconduct*

Scottzsha contends that the prosecutor committed prejudicial misconduct by commenting on his postarrest, pre-*Miranda* silence (failure to offer his testimonial trial explanation at the time of his arrest) during final argument.  He also asserts that the prosecutor was guilty of misconduct in violating an in limine order requiring that he first allow the trial court to determine the admissibility of the evidence before commenting to the jury.  We disagree with both contentions.

1.    *Defense In Limine Motion*

The defense filed a pretrial motion in limine asking the trial court to require the prosecution to provide "[a]ny statements of the defendant, including but not limited to all statements that prosecution intends to use in its case-in-chief or as impeachment.  (Evid. Code, § 402; Pen. Code, § 1054.1[, subd. ](b).)"  The defense also moved "[t]hat no reference be made during the trial to any statements made by [Scottzsha] to any police officer, loss prevention officer, or other member of law enforcement prior to a hearing concerning the admissibility of those statements pursuant to [*Miranda*] and the due process clauses of the United States and California Constitutions."  At the hearing on the motions, the prosecutor indicated that he did not intend to use any statements to law enforcement by Scottzsha in his case in chief.  The trial court found that it was not "a ripe issue at this point.  If any statements do become an issue, I'd just ask you to approach so we can have a 402 outside the presence of the jury if need be."

Scottzsha alleges that the prosecutor committed misconduct and violated an in limine order when he commented to the jury on Scottzsha's postarrest silence without allowing the court to first determine whether the evidence was admissible under *Fletcher v. Weir* (1982) 455 U.S. 604 (*Fletcher*).  "[A] prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it 'infects the trial with such unfairness as to make the conviction a denial of due process.'  [Citations.]  In other words, the misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'  [Citation.]  A prosecutor's conduct ' "that does not

render a criminal trial fundamentally unfair" ' violates California law ' "only if it involves ' "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." ' " ' [Citation.]" (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 119.)

We see no evidence of misconduct by the prosecutor. The first problem with Scottzsha's argument is that the trial court made no direct ruling on the in limine motion, only finding that the issue was not "ripe" at the time presented, and asking the prosecution "to approach so we can have a 402 outside the presence of the jury if need be." As discussed *post*, we find that the evidence Scottzsha contests was admissible under *Fletcher* and so far as the record reflects, Scottzsha never asserted that an Evidence Code section 402 hearing was required. Further, we find no readily apparent basis which would have required the court to exclude the evidence had such a hearing been held, and nothing in the record indicates that the trial court considered the prosecution's conduct to have violated any of its orders.

2.      Doyle[3] *Error*

The Fifth Amendment generally "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." (*Griffin v. California* (1965) 380 U.S. 609, 615, fn. omitted.) Moreover, *Miranda* warnings contain an implicit assurance that no penalty will attach to silence in the face of police interrogation, and "[i]n such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." (*Doyle, supra,* 426 U.S. at p. 618, fn. omitted.) Consequently, the Supreme Court in *Doyle* held that "the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." (*Id*. at p. 619.) But the Supreme Court also subsequently held that the same rationale did not apply, and that there is no constitutional prohibition on inquiry about postarrest silence,

---

[3] *Doyle v. Ohio* (1976) 426 U.S. 610.

6

where no *Miranda* warnings were given following the arrest. (*Fletcher, supra,* 455 U.S. at p. 607.) "In the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand." (*Ibid*.)

Scottzsha made no contemporaneous objection to the prosecution's argument he now challenges on appeal. Failure to object in the trial court results in waiver of the claim of *Doyle* error that Scottzsha seeks to pursue here. (*People v. Coffman and Marlow, supra,* 34 Cal.4th at p. 118.) However, since Scottzsha alleges in the alternative that failure to object resulted in ineffective assistance of counsel, we nevertheless address the merits. To establish ineffective assistance of counsel, a defendant must show not only that counsel's performance was deficient and fell below an objective standard of reasonableness, but that it is reasonably probable that a more favorable result would have been reached absent the deficient performance. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688.) Absent a showing of prejudice, the claim of ineffective assistance fails and inquiry into the adequacy of counsel's performance is unnecessary. (*People v. Sanchez* (1995) 12 Cal.4th 1, 40–41, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421 & fn. 22.)

Scottzsha first contends that *Fletcher* requires cross-examination on a defendant's postarrest silence, and that comment to the jury on postarrest silence in the absence of such cross-examination is impermissible. He argues that *Fletcher* is "limited to holding that the state may cross-examine a defendant on his post-arrest silence when the defendant chooses to take the witness stand." The underlying factual premise for this argument is incorrect to the extent Scottzsha contends that he was not asked about his statements. Scottzsha was asked on cross-examination about his false claim never to have been to Pinole, and he conceded that he in fact knew "exactly what [the Pinole detectives] were talking about."[4] Further, we find no legal support for this contention.

---

[4] After Scottzsha testified in his own defense, the prosecutor recalled Combong as a rebuttal witness. Combong testified, without objection, that when told that he was

The *context* in which postarrest pre-*Miranda* silence was used in *Fletcher* was cross-examination.  The defendant had testified in his own defense, admitted stabbing the victim, but claimed that he acted in self-defense and that the stabbing was accidental.  The prosecution cross-examined Fletcher as to why he had, when arrested, failed either to advance his exculpatory explanation to the arresting officers or to disclose the location of the knife he had used to stab the victim.  (*Fletcher, supra,* 455 U.S. at pp. 603–604.)  In discussing its post-*Doyle* decisions, the high court observed that it had "consistently explained *Doyle* as a case where the government had induced silence by implicitly assuring the defendant that his silence would not be used against him" (*id.* at p. 606) and reiterated its statement in *Jenkins v. Anderson* (1980) 447 U.S. 231, 239 (a case dealing with prearrest silence):  " 'Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted.  [Citation.]  Each jurisdiction may formulate its own rules of evidence to determine when prior silence is so inconsistent with present statements that impeachment by reference to such silence is probative.' "  In its *per curiam* opinon, the *Fletcher* court made no suggestion that impeachment by use of postarrest, pre-*Miranda* silence was *limited* to cross-examination, nor do we perceive any logical reason why it would be so limited.  "The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony." (*Wainwright v. Greenfield* (1986) 474 U.S. 284, 292.)  Absent such an implied promise, once the defendant has elected to testify to a version of events, whether the defendant is impeached by cross-examination, or is subject to comment by the prosecution on failure to earlier offer such evidence would appear to make little difference.

---

being arrested for a shooting at the In-N-Out Burger in Pinole, Scottzsha said that he "never heard of Pinole and didn't know where Pinole was."

Scottzsha can point to no case that has adopted his assertion that *Fletcher* is "limited to holding that the state may cross-examine a defendant on his post-arrest silence when the defendant chooses to take the witness stand." In fact, the only California case that Scottzsha cites in support of his argument, *People v. Evans* (1994) 25 Cal.App.4th 358, implicitly recognizes that use of a defendant's postarrest silence can occur "either by questioning or by reference in closing argument." (*Id.* at p. 368 & fn. 6 ["depending on the context, the use can be attacked as evidentiary error, prosecutorial misconduct, or . . . both"].)

Citing *United States v. Cummiskey* (3rd Cir. 1984) 728 F.2d 200 (*Cummiskey*), Scottzsha next argues that the prosecution failed to meet its burden to affirmatively establish that appellant's postarrest silence was admissible under *Fletcher*. Scottzsha insists that the prosecution must show, by record evidence, that *Miranda* warnings were not given prior to the silence relied upon for impeachment purposes, and that the prosecution made no effort to do so here. (See *Cummiskey,* at p. 206 ["[a]bsent record evidence [that *Miranda* warnings were not given] the prosecutor may not, during cross-examination or argument, rely, for impeachment, on the fact that the witness's statement to the arresting officer was not as complete as that made on the stand"]; cf. *Weir v. Wilson* (6th Cir. 1984) 744 F.2d 532, 535 ["[w]e believe . . . it is necessary that the defense make such a showing [that *Miranda* warnings were given prior to his silence] before *Doyle . . .* comes into play].) Thus, Scottzsha contends, the *Doyle* prohibition applies here. However, as the People correctly note, *Cummiskey* premised its holding upon the burden allocated to the prosecution under the Federal Rules of Evidence, rule 104(b), and not on constitutional grounds. Further, the burden only shifts to the prosecution under the Federal Rules of Evidence "when a testifying defendant makes an objection to the prosecutor's cross-examination with respect to post-arrest silence . . . ." (*Cummiskey,* at p. 206.) Scottzsha made no such objection. *Cummiskey* is in any event, not binding on this court. (*People v. Williams* (1997) 16 Cal.4th 153, 190 ["[d]ecisions of lower federal courts interpreting federal law are not binding on state courts"].)

9

Both sides also argue at some length about whether the prosecution's rebuttal argument was a direct response to defense argument.[5] (See *United States v. Robinson* (1988) 485 U.S. 25, 26, 34 [declining to apply *Griffin v. California, supra,* 380 U.S. 609 where defense argued in closing that the government had not allowed defendant to explain his side of the story, and the prosecution's response was that defendant " 'could have taken the stand and explained it to you' "].) We need not attempt to parse the defense argument, or determine whether the prosecution's argument was, or was not, a fair response, because it is irrelevant here. Scottzsha testified and offered a sworn version of events at odds with his pre-*Miranda* statement to police that he "never heard of Pinole and didn't know where Pinole was." "A violation of due process does not occur where the prosecutor's reference to defendant's postarrest silence constitutes a fair response to defendant's claim *or a fair comment on the evidence*. [Citations.]" (*People v. Champion* (2005) 134 Cal.App.4th 1440, 1448, italics added.)

There was nothing improper in the prosecution's comment that Scottzsha had the opportunity to provide his story at the time of his arrest, but instead chose to falsely deny that he had any knowledge of the location where the shooting occurred. There was no *Doyle* violation, because there is no evidence that "the government . . . induced silence by implicitly assuring the defendant that his silence would not be used against him."

---

[5] Defense counsel said: "Imagine the task—imagine the task of being accused of a serious crime. You have to understand that you have the burden of proof on your side, but that's not very comforting because, the way the system works, the prosecution presents its case first. Your foundation for this case was laid before Mr.Scottzsha ever got to open his mouth." Counsel later, in discussing how to evaluate Scottzsha's testimony, said: "The other thing you have to keep in mind is that Mr. Scottzsha heard all the testimony. So to the extent—and I assume the suggestion, if not outright, at least implied—is that he's perjuring himself, or perjured himself when he testified. Keep in mind that if you say, well what about this detail? He got that wrong. Well, he heard all the testimony before. If he wanted to craft his testimony so that it fit seamlessly with the other testimony, he would have. . . . [¶] So, my suggestion is, to the extent that you can say that Mr. Scottzsha's testimony did not coincide with this testimony, that then drawing the conclusion that therefore this shows that Mr. Scottzsha lied, would be incorrect. It just means that his memory of what happened is different or it means on that point perhaps he was mistaken or the other person was mistaken."

(*Fletcher, supra,* 455 U.S. at p. 606.)  Scottzsha's derivative claim of ineffective assistance of counsel therefore also lacks merit.

B.      *Concurrent Sentences and Section 654*

Scottzsha challenges his concurrent sentences for attempted murder and robbery. He contends that the crimes occurred during a single, continuous course of conduct with a single criminal objective, and that the robbery term must be therefore be stayed under section 654.

Section 654, subdivision (a), provides, in relevant part:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  The purpose of the statute "is to prevent multiple punishment for a single act or omission, even though that act or omission violates more than one statute and thus constitutes more than one crime." (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312.)  " '[T]he protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability.'  [Citation.]" (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 268.)

Section 654 precludes multiple punishment for a single act and also for multiple acts constituting an indivisible course of conduct.  (*People v. Hester* (2000) 22 Cal.4th 290, 294.)  "If all of the offenses are incident to one objective, the court may punish the defendant for any one of the offenses, but not more than one.  [Citation.]" (*People v. Cleveland, supra,* 87 Cal.App.4th at p. 267.)  "If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.'  [Citation.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)

Whether a defendant entertained multiple criminal objectives presents a question of fact for the trial court.  (*People v. Osband* (1996) 13 Cal.4th 622, 730–731.)  The trial

11

court's implicit factual determination, that robbery and attempted murder were not subject to section 654, is reviewed on appeal for substantial evidence. (*People v. Osband,* at pp. 730–731; *People v. Martin* (2005) 133 Cal.App.4th 776, 781.) Where the evidence is conflicting, we must " ' "view the evidence in a light most favorable to the [trial court's determination] and presume in support of the [sentencing] order the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]" [Citation.]' [Citation.]" (*People v. Hutchins, supra,* 90 Cal.App.4th at pp. 1312–1313.)

*People v. Cleveland, supra*, 87 Cal.App.4th 263, presented a challenge to consecutive sentences for robbery and attempted murder. The defendant took a Sony Walkman from a 66-year-old feeble, unresisting victim, repeatedly hitting him on the head and body with a board, breaking the board and leaving the victim unconscious. (*Id.* at pp. 271–272.) The court observed that "[w]hile it is true that attempted murder can, under some circumstances, constitute the 'force' necessary to commit a robbery, here, it was not the necessary force." (*Id.* at p. 272.) "[A]n act of 'gratuitous violence against a helpless and unresisting victim . . . has traditionally been viewed as not 'incidental' to robbery for purposes of . . . section 654.' [Citations.]" *People v. Bui* (2011) 192 Cal.App.4th 1002, 1016.)

Scottzsha insists that this case involved no such "gratuitous" acts of violence, and that he pointed a gun at Jackson in the midst of the robbery, and when Jackson tried to push the gun away, three shots were fired in rapid succession. But Jackson's testimony was that when Scottzsha pointed the gun at him and he attempted to push the barrel of the gun away, Scottzsha shot him in the abdomen, the left ribcage, and then a third time in the back. " '[A]t some point the means to achieve an objective may become so extreme they can no longer be termed "incidental" and must be considered to express a different and more sinister goal than mere successful commission of the original crime.' " (*People v. Cleveland, supra*, 87 Cal.App.4th at p. 272.) There was substantial evidence, including the third shot in Jackson's back before Scottzsha fled, from which the trial court could conclude that Scottzsha engaged in gratuitous acts of violence, separate and apart from

the force required to effectuate the robbery, and that concurrent punishment was therefore commensurate with his criminal liability.

C.     *The Restitution Fine*

The trial court imposed a section 1202.4, subdivision (b) restitution fine in the amount of $10,560. The court calculated the fine by multiplying a base minimum fine of $240 by the number of years of commitment (44), consistent with the base minimum fine amount in effect at the time of sentencing. (§ 1202.4, subd. (b), as amended by Stats. 2011, ch. 358, § 1.) Scottzsha, however, was convicted of crimes committed before January 1, 2012, when the base minimum fine was $200. (§ 1202.4, subd. (b), as amended by Stats. 2011, ch. 45, ch. 1.)[6] Scottzsha contends the $10,560 restitution fine was an unauthorized sentence that should be corrected by remand for resentencing. The People concede that the fine imposed exceeds the applicable statutory maximum of $10,000.[7]

Scottzsha insists that the court's multiplication of the minimum fine by the number of years of imprisonment to reach the total amount of the fine, "affirmatively demonstrates that the trial court did not understand the scope of its sentencing discretion"; that the record does not reflect that the trial court intended to impose the

---

[6] At the time Scottzsha's crimes were committed, section 1202.4, subdivision (b) provided in relevant part: "In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record. [¶] (1) The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense, but shall not be less than two hundred dollars ($200), and not more than ten thousand dollars ($10,000), if the person is convicted of a felony . . . . [¶] (2) In setting a felony restitution fine, the court may determine the amount of the fine as the product of two hundred dollars ($200) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." (Stats. 2011, ch. 45, ch. 1.)

[7] "A restitution fine qualifies as punishment for purposes of the prohibition against ex post facto laws. [Citations]" (*People v. Saelee* (1995) 35 Cal.App.4th 27, 30.)

13

maximum possible sentence; and that remand to determine the amount of the restitution fine is therefore required.[8] We disagree.

A restitution fine under section 1202.4 is mandatory unless the sentencing court " 'finds compelling and extraordinary reasons for not doing so, and states those reasons on the record.' (§ 1202.4, subd. (b).)" (*People v. Tillman* (2000) 22 Cal.4th 300, 302.) Section 1202.4, subdivision (b)(1), provides that the amount of the restitution fine "shall be set at the discretion of the court and commensurate with the seriousness of the offense." We do not, as Scottzsha suggests, presume that the trial court was unaware of its discretionary authority in imposing the fine and disagree that the record "affirmatively demonstrates" otherwise. "Pursuant to Evidence Code section 664, 'Court and counsel are presumed to have done their duty in the absence of proof to the contrary.' [Citations.]" (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 549.) The only demonstrated error was that the court mistakenly relied upon a different version of the statute in its calculations.

We see no indication that the court intended to impose anything other than the base restitution amount multiplied by the number of years of imprisonment,[9] and thus remand for resentencing is not necessary. Instead, we modify the judgment to reduce the restitution fine imposed on Scottzsha to $8,800, the maximum amount permissible under the court's formula ($200 multiplied by 44), and will direct the clerk of the court to amend the abstract of judgment accordingly. (See *People v. Blackburn* (1999) 72 Cal.App.4th 1520, 1534.)

---

[8] The People equivocate on whether remand is required: they suggest at one point that this court should simply direct correction of the abstract of judgment to reflect the maximum allowable fine of $10,000, but then conclude that remand for resentencing appears warranted.

[9] In setting the restitution fine using a formula based on section 1202.4, subdivision (b)(2), the court necessarily rejected the lesser amount of $5,000 recommended by the probation department.

14

### III.    DISPOSITION

The judgment is modified to reduce the amount of the restitution fine imposed under section 1202.4, subdivision (b) to the amount of $8,800.  The clerk of the superior court is directed to prepare, and forward to the Department of Corrections and Rehabilitation, an amended abstract of judgment reflecting the modified restitution fine. In all other respects, the judgment is affirmed.

        _____

        Bruiniers, J.

We concur:

_____

Jones, P. J.

_____

Needham, J.